\6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1   BHARATH KAKIREDDY,
D-2   SURESH REDDY KANDALA,
D-3   PHANIDEEP KARNATI,
D-4   PREM KUMAR RAMPEESA,
D-5   SANTOSH REDDY SAMA,
D-6   AVINASH THAKKALLAPALLY,

Defendants.
_____/

Case:2:19-cr-20026
Judge: Friedman, Bernard A.
MJ: Patti, Anthony P.
Filed: 01-15-2019 At 04:47 PM
INDI USA V. SEALED MATTER (DA)

VIO:  18 U.S.C. § 371
      (Conspiracy to commit visa
      fraud and to harbor aliens for
      profit)

# I N D I C T M E N T

THE GRAND JURY CHARGES:

At all times pertinent to this indictment:

## General Allegations

1) From approximately February 2017 through January 2019, the defendants, a
group of foreign citizens acting in concert with each other and others, assisted
at least 600 other foreign citizens to illegally remain, re-enter and work in the
United States, and actively recruited them to enroll into a fraudulent school as

part of a "pay to stay" scheme. Because of their recruiting success, this alliance collectively profited in excess of quarter of a million dollars.

### The Student Visa Process

2) The laws of the United States require foreign citizen students to obtain a visa prior to entry into the United States. A visa is an endorsement placed within a passport that grants the holder official permission to enter, leave or stay in the United States for a specified period. A foreign citizen who wishes to enter and remain in the United States to pursue a course of study at a college, university, or other academic institution, must first obtain an F-1 non-immigrant visa, also known as a student visa ("F-1 visa"). The F-1 visa permits a foreign citizen student to enter and remain in the United States on a temporary basis to study, and requires the foreign citizen student to return to their native country after completing their course of study.

3) To obtain an F-1 visa, a foreign citizen must first apply to study at a school within the United States that has been certified by the Student and Exchange Visitor Program ("SEVP") to enroll and educate foreign students. The United States Department of Homeland Security oversees the certification and administration of the SEVP. If accepted, the school will provide the foreign citizen with a "Certificate of Eligibility for Nonimmigrant Student Status," also known as a Form I-20 ("Form I-20").

4) By issuing a Form I-20 to a foreign citizen student, an SEVP-approved school certifies that the individual: (1) meets all standards of admission for the school based on a review of the student's application, transcripts, proof of financial responsibility, and other records; and (2) has been accepted for, and would be required to pursue, a full course of study.

5) Once a foreign citizen student receives a Form I-20, that individual may apply for an F-1 visa. As part of the F-1 visa application process, the foreign citizen student must: 1) complete a non-immigrant visa application; and 2) attend an F-1 visa interview at the United States Embassy or Consulate in the student's native country. Upon approval of the F-1 visa, the foreign citizen student can use the F-1 visa and Form I-20 to enter and remain in the United States for the duration of study.

6) A foreign citizen student must present both their F-1 visa and the Form I-20 to a United States Immigration Officer upon arrival at any United States port-of-entry. Once a foreign citizen student has been admitted to the United States, the Form I-20 is used as their identification, and proof of legal and academic status.

7) After a foreign citizen student completes his or her course of study, that individual is required to depart the United States within 60 days. Conversely, if the foreign citizen student is no longer enrolled as a full-time student in an

approved educational program, making normal progress toward completion of the course of study, stops attending school, or drops below the full course of study without authorization, they are considered as being "out of status" or having "failed to maintain status." Once the foreign citizen student is "out of status" or having "failed to maintain status," they must depart the United States within 15 days.

8) The United States Department of Homeland Security manages foreign students in the United States through the Student and Exchange Visitor Information System ("SEVIS"). SEVIS is an internet-based data system that provides school and government officials, including immigration officials, with access to current information on nonimmigrant foreign citizen students, exchange aliens, and their dependents.

9) Once in the United States, a foreign citizen student is permitted to transfer from one SEVP-certified school to another, as long as that individual maintains valid F-1 student status and is pursuing a full course of study. To effect such a transfer while maintaining valid status, a foreign citizen student must first obtain a school acceptance letter and a SEVIS transfer form from the SEVP-certified school to which the student intends to transfer. The foreign citizen student may then transfer to that school, obtain a Form I-20, and

remain in the United States as long as he or she pursues a full course of study at the new SEVP-certified school.

10)     In addition to taking a full course of study at an accredited institution, certain F-1 foreign citizen students may also seek practical training – which could include paid employment. However, the practical training must be directly related to the student's major and is therefore considered part of the student's program of study.

11)     One type of practical training available to certain F-1 students include curricular practical training ("CPT"). CPT is an alternative work/study, internship, cooperative education, or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with a SEVP-certified institution. An F-1 student may be authorized by designated school officials to participate in a CPT program that is an integral part of an established curriculum.

12)     If approved by, an F-1 student may obtain a new Form I-20 indicating that he or she has been approved for CPT. Generally, therefore, as long as an F-1 student has been properly enrolled at an SEVP- certified school, has taken classes and earned credits, and has made academic progress toward graduation, that F-1 student may have the opportunity to work full or part-time CPT, in addition to taking classes.

13)     When foreign citizen students want to travel abroad, they must have a valid travel endorsement on their Form I-20, which can be authorized by their school's designated officials. Additionally, foreign citizen students are required to take their Form I-20 with them when they travel abroad. As such, the document is commonly referred to as a "Travel I-20." The "Travel I-20" acts as an entry document into United States. Therefore, the foreign citizen student must present their authorized "Travel I-20" to a United States immigration officer upon arrival at the United States port-of-entry to be able to lawfully re-enter the United States.

14)     The Form I-20 is a multipurpose document. Among other uses, the Form I-20: (1) allows an individual to apply for an F-1 student visa at a United States embassy or consulate abroad, lawfully enter and remain in the United States; (2) is used as identification, evidence of authorized stay, and proof of legal and academic status once a student has been admitted to the United States; (3) operates as an entry document for foreign citizen students who travel abroad and; (4) permits a foreign citizen student to participate in practical training related to their course of study.

15)     The non-immigrant F-1 student visa does not create a direct path to United States citizenship nor does it immediately allow a foreign citizen

student to lawfully work in the United States. However, a foreign citizen student who obtains an offer of employment with a United States company willing to sponsor the student to remain in the United States, may be eligible for an H1-B visa. This sponsoring company must demonstrate that it has an exclusive need for the foreign citizen student and must prove that the task being performed by the foreign citizen student cannot be accomplished by a local citizen because they are either unavailable or academically or professionally unqualified.

16)     Even though the H-1B visa is a non-immigrant visa it is one of the few United States visa categories recognized as dual intent, meaning that the sponsoring employer can petition for the foreign citizen student/employee to change from H1B to Lawful Permanent Resident status. A Lawful Permanent Resident, otherwise known as a "Green Card" holder, who is physically present in the United States for at least 5 years, and meets all other eligibility requirements, can seek to become a naturalized citizen of the United States.

**The University of Farmington**

17)     From on or about February 2017 through on or about January 2019, undercover agents from Homeland Security Investigations ("HSI") posed as owners and employees of the University of Farmington ("University"), which was physically located in Farmington Hills, Michigan.

18) Beginning in 2015, the University was part of a federal law enforcement undercover operation designed to identify recruiters and entities engaged in immigration fraud. The University was not staffed with instructors/educators; it had no curriculum, no actual classes nor any educational activities being conducted therein. Rather, the University was being used by foreign citizens as a "pay to stay" scheme which allowed these individuals to stay in the United States as a result of foreign citizens falsely asserting that they were enrolled as full-time students in an approved educational program and that they were making normal progress toward completion of the course of study.

19) Each of the foreign citizens who "enrolled" and made "tuition" payments to the University knew that they would not attend any actual classes, earn credits, or make academic progress toward an actual degree in a particular field of study – a "pay to stay" scheme. Rather, their intent was to fraudulently maintain their student visa status and to obtain work authorization under the CPT program. Each student knew that the University's program was not approved by the United States Department of Homeland Security ("DHS"), was illegal, and that discretion should be used when discussing the program with others.

20)      The defendants herein were "recruiters" and profited from the "pay to stay" scheme.  In exchange for cash, kickbacks, "scholarships" and tuition credits, the defendants enlisted hundreds of foreign citizens to enroll at the University.  The defendants, in furtherance of the fraud scheme, conspired with foreign citizens to fraudulently maintain their non-immigrant status as "students" and helped them unlawfully stay and obtain employment authorization in the United States.

21)      Additionally, the defendants facilitated the creation of false student records, including transcripts, for the purpose of deceiving immigration authorities.

These General Allegations are incorporated in each count of the indictment.

## COUNT ONE

**(Conspiracy to Commit Visa Fraud and Harbor Aliens for Profit, 18 U.S.C. § 371)**

D-1    BHARATH KAKIREDDY,
D-2    SURESH REDDY KANDALA,
D-3    PHANIDEEP KARNATI,
D-4    PREM KUMAR RAMPEESA,
D-5    SANTOSH REDDY SAMA,
D-6    AVINASH THAKKALLAPALLY,

From on or about February 2017 up to and including the date of this indictment, in Oakland County, in the Eastern District of Michigan, and elsewhere,

Bharath Kakireddy, Suresh Reddy Kandala, Phanideep Karnati, Prem Kumar Rampeesa, Santosh Reddy Sama, and Avinash Thakkallapally, defendants herein, did knowingly and intentionally conspire and agree with each other and with others, known and unknown to commit the following offenses against the United States:

(a) to knowingly, or knowingly cause another, to possess, obtain, accept, and receive a *"Certificate of Eligibility for Nonimmigrant Student Status,"* also known as a Form I-20, a document proscribed by statute and regulation for entry into and as evidence of authorized stay in the United States, knowing that such form had been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18, Sections 1546(a) and 2; and

(b) to knowingly, or in reckless disregard of the fact that an alien remains in the United States in violation of law, conceal, harbor or shield from detection, such alien in any place, for the purpose of commercial advantage or private financial gain, in violation of Title 8, Sections 1324(a)(1)(A)(iii); 1324(a)(1)(B)(i).

### Overt Acts

In furtherance of the conspiracy and to effect its unlawful objects, the defendants committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1) On or about February 13, 2017, Santosh Reddy Sama telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status. Sama further requested a tuition reduction for bringing students at the University. That same day, Sama emailed a recruited student's application to the University.

2) On or about March 1, 2017, Suresh Reddy Kandala telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status.

3) On or about May 8, 2017 & May 10, 2017, Bharath Kakireddy telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status.

4) On or about July 17, 2017, Avinash Thakkallapally telephoned an HSI undercover agent regarding enrolling in the University without attending classes in order to fraudulently maintain his immigration status. The following day, Sama telephoned the same agent regarding two to three students that Sama and Thakkallapally mutually recruited. Sama further discussed student referral fees.

5) On or about September 14, 2017, Karideddy came to the University and collected $5000 for recruiting students.

6) On or about December 13, 2017, Thakkallapally emailed an HSI undercover agent his bank account information so that Thakkallapally could collect $5000 for recruiting students.

7) On or about January 22, 2018, Sama and Kandala met with an HSI undercover agent at the University to collect $20,000 for recruiting students. During that meeting, Sama identified Phanideep Karnati as a person who helps Sama recruit students for the University.

8) On or about February 2, 2018, Thakkallapally emailed a photograph of one his recruited students to an HSI undercover agent requesting that the agent mail the student an identification card and a Form I-20.

9) On or about February 28, 2018, Karnati sent an email to an HSI undercover agent identifying Sama as his friend. Karnati asked that the University accept and enroll at least 50 students from Sama's list of recruited students.

10)   On or about April 18, 2018, Sama sent an email to an HSI undercover agent and stated that Karnati works for him. In addition, Sama stated that five of their recruited students paid their tuition to Karnati.

11)   On or about June 8, 2018, Sama came to the University and collected $ 20,000 for recruiting students. After payment, Karnati arrived at the University. Thereafter, Karnati and Sama discussed their student recruiting efforts with the HSI undercover agent.

12)    On or about August 24, 2018, Sama telephoned an HSI undercover agent and stated that Prem Kumar Rampeesa helps him recruit students for the University.

13)    On or about September 20, 2018, Sama emailed an HSI undercover agent his bank account information so that Sama could collect $9000 for recruiting students.

14)    On or about October 2, 2018, Rampeesa telephoned an HSI undercover agent regarding enrolling into the University knowing it was a "pay to stay" scheme. Rampeesa also discussed his business relationship with Sama, including the number of students he recruited to the University and the amount Sama pays him per student.

In violation of Title 18, United States Code, Section 371.

## Forfeiture Allegations

### (18 U.S.C. § 982(a)(6) and 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c))

The General Allegations and allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(6), as well as 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c).

Upon conviction of the forgoing violation of 18 U.S.C. § 371, as charged in Count One of this Indictment, the convicted defendant(s) shall forfeit to the United States, under 18 U.S.C. § 982(a)(6) and/or under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c) his/her right, title, and interest in any property, real or personal, which constitutes, or is derived from, or is traceable to proceeds of the commission of the offense, and all property, real or personal, which was used to facilitate or intended to be used to facilitate, the commission of such an offense.

Such property includes, but is not limited to, a forfeiture money judgment against the convicted defendant(s) in an amount to be determined, representing the total value of all property subject to forfeiture.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the convicted defendant(s):

A. cannot be located upon the exercise of due diligence;

B. has been transferred or sold to, or deposited with, a third party;

C. has been placed beyond the jurisdiction of the court;

D. has been substantially diminished in value; or

E. has been commingle with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461(c).

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

MATTHEW SCHNEIDER
United States Attorney

*s/Cathleen Corken*
CATHLEEN CORKEN
Chief, National Security Unit
Assistant United States Attorney

*s/Brandon Helms*
BRANDON HELMS
Assistant United States Attorney

*s/Timothy P. McDonald*
TIMOTHY P. MCDONALD
Assistant United States Attorney

*s/Ronald W. Waterstreet*
RONALD W. WATERSTREET
Assistant United States Attorney

Dated: January 15, 2019

| United States District Court Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: _RW_ |

**Case Title:** USA v. BHARATH KAKIREDDY, et al.

**County where offense occurred :** Oakland County

**Check One:**   ☒ Felony      ☐ Misdemeanor      ☐ Petty

    ✓ Indictment/____ Information --- **no prior complaint.**
    ____ Indictment/____ Information --- based upon prior complaint [Case number:           ]
    ____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

    ☐ Corrects errors; no additional charges or defendants.
    ☐ Involves, for plea purposes, different charges or adds counts.
    ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 15, 2019
_____
Date

_Timthy P. McDonel (for)_

Ronald Waterstreet
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9593
Fax:  313-226-5464
E-Mail address: Ronald.Waterstreet@usdoj.gov
Attorney Bar #:  P42197

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.