```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3     UNITED STATES OF AMERICA,

 4               Plaintiff,

 5      v                                    No. 19-CR-20026

 6

 7     PREM KUMAR RAMPEESA,

               Defendant.
 8     _____/

 9
                                 PLEA HEARING
10
                  BEFORE THE HONORABLE GERSHWIN A. DRAIN
11                   UNITED STATES DISTRICT JUDGE
                 Theodore Levin United States Courthouse
12                    231 West Lafayette Boulevard
                           Detroit, Michigan
13                       Monday, June 3, 2019

14     APPEARANCES:

15
         For the Plaintiff:      MR. BRANDON C. HELMS
16                               MR. RONALD W. WATERSTREET
                                 MR. TIMOTHY P. MCDONALD
17                               U.S. Department of Justice
                                 211 W. Fort Street, Suite 2001
18                               Detroit, Michigan  48226
                                 (313)  226-9639
19                               (313)  226-9100
                                 (313)  226-0221
20
         For the Defendant:      MS. WANDA R. CAL
21                               Wanda R. Cal, Attorney at Law
                                 1401 S. Fort  Street, #44473
22                               Detroit, Michigan 48244
                                 (313)  965-1210
23

24     Reported by:             Merilyn J. Jones, RPR, CSR
                                 Official Federal Court Reporter
25                               merilyn_jones@mied.uscourts.gov
```

2

```
                        TABLE OF CONTENTS

WITNESSES:  PLAINTIFF                                    PAGE
None

WITNESSES:  DEFENDANT
None

OTHER MATERIAL IN TRANSCRIPT:
Proceedings                                              3

EXHIBITS:              Identified          Received
None
```

```
 1                    Detroit, Michigan

 2                    Monday, June 3, 2019 - 11:15 a.m.

 3                    THE CASE MANAGER:  All rise.  The United States

 4     District Court for the Eastern District of Michigan is now in

 5     session.  The Honorable Gershwin A. Drain presiding.

 6                    You may be seated.

 7                    The Court calls the criminal matter United States

 8     of America versus Prem Kumar Rampeesa.  Case number

 9     19-cr-20026-4.

10                    Counsel, please state your appearances for the

11     record.

12                    MR. HELMS:  Good morning, your Honor.  Brandon

13     Helms on behalf of the United States, and with me are Ronald

14     Waterstreet and Tim McDonald from my office.

15                    THE COURT:  All right.  Good morning.

16                    MR. WATERSTREET:  Good morning.

17                    MR. MCDONALD: Good morning.

18                    MS. CAL:  Good morning, your Honor.  Wanda Cal on

19     behalf of Prem Rampeesa.

20                    THE COURT:  All right.  Good morning, Ms. Cal.

21                    All right.  We have an interpreter and I'm going

22     to have my case manager administer the interpreter's oath.

23                    THE CASE MANAGER:  Do you solemnly swear that you

24     will translate the oath and such questions as shall be put to

25     this defendant from the English language to the Telegu language
```

1    and his answers from the Telegu language to the English

2    language to the business of your ability?

3                    THE INTERPRETER:    I do.

4            (At 11:16 a.m., Aparanji Balabhadrapatruni sworn by the

5            case manager to interpret English into Telegu and

6            Telegu into English)

7                    THE CASE MANAGER:  Please state your full name for

8    the record.

9                    THE INTERPRETER:  My full name is Aparanji

10   Balabhadrapatruni.

11                   THE COURT:  All right.  Why don't I have Ms. Cal,

12   the defendant, and the interpreter approach the podium.

13                   All right.  Ms. Cal, as I understand it, the

14   defendant wants to tender a plea of guilty to the charge

15   contained in the indictment; is that correct?

16                   MS. CAL:  Yes, your Honor.

17                   THE COURT:  Okay.  And as I understand it, there's

18   no Rule 11 Plea Agreement that has been entered into in this

19   case.

20                   MR. HELMS:  Yes, your Honor.  A Rule 11 had been

21   offered by it was rejected.

22                   THE COURT:  Okay.

23                   MS. CAL:  Yes.

24                   THE COURT:  Okay.  All right.  Then, Mr. Rampeesa,

25   I'm going to be asking you a number of questions, and if at any

1    point in time you have any questions about what I ask you, stop

2    me and let me know, you understand that?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Okay.  All right.  I'm going to first

5    have my case manager administer an oath to you.

6                    THE CASE MANAGER:  Raise your right hand, please.

7    Do you solemnly swear or affirm that the testimony you're about

8    to give to the Court in this matter here pending shall be the

9    truth, the whole truth, and nothing but the truth?

10                    THE DEFENDANT:  Yes.

11                    P R E M    K U M A R    R A M P E E S A,

12    Called at 11:18 a.m., sworn through the interpreter

13                    THE COURT:  Okay.  Please state your full name for

14    the record.

15                    THE DEFENDANT:  Prem Kumar Rampeesa.

16                    THE COURT:  Okay.  All right.  Mr. Rampeesa, do

17    you understand that you are now under oath --

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  -- and if you answer any of my

20    questions falsely, your answers may later be used against you

21    in a separate prosecution for perjury or false statement; do

22    you understand that?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  Okay.  And so, give us your full name

25    again?

```
 1                    THE DEFENDANT:  Prem Kumar Rampeesa.

 2                    THE COURT:  Okay.  And how old are you?

 3                    THE DEFENDANT:  Twenty-seven.

 4                    THE COURT:  And how far did you go in school?

 5                    THE DEFENDANT:  Master's.

 6                    THE COURT:  Okay.

 7                    THE DEFENDANT:  Master's in computer science.

 8                    THE COURT:  Okay.  All right.  And so, have you

 9      been treated recently for any type of mental illness or

10      addiction to narcotics or alcohol?

11                    THE DEFENDANT:  No.

12                    THE COURT:  Okay.  And are you currently under the

13      influence of any drugs, medication, or alcoholic beverage?

14                    THE DEFENDANT:  No.

15                    THE COURT:  Okay.  And have you received a copy of

16      the indictment that charges you with a crime?

17                    THE DEFENDANT:  Yes.  I have it with me.

18                    THE COURT:  Okay.  And have you talked to Ms. Cal

19      about the charges?

20                    THE DEFENDANT:  Yes.

21                    THE COURT:  And has she been able to answer any

22      questions you have about the charges?

23                    THE DEFENDANT:  Yes, she did.

24                    THE COURT:  And are you satisfied with the advice

25      and counsel you've received from her up to this point?
```

```
1                    THE DEFENDANT:  Yes.

2                    THE COURT:   And have there been any promises made

3      to you with regard to entering this plea of guilty?

4                    THE DEFENDANT:  No.

5                    THE COURT:  Has anyone forced you to enter this

6      plea of guilty?

7                    THE DEFENDANT:  No.

8                    THE COURT:  Has anyone threatened you in any way

9      to persuade you to plead guilty?

10                   THE DEFENDANT:  No.  No one has threatened me.

11                   THE COURT:  Okay.  And so, Mr. Rampeesa, do you

12     understand that the maximum sentence the Court could impose

13     would be a sentence of up to five years' imprisonment?

14                   THE DEFENDANT:  Yes, I understood.

15                   THE COURT:  And do you understand that the maximum

16     fine I could impose is a fine of up to $250,000?

17                   THE DEFENDANT:  Yes, I understood.

18                   THE COURT:  And do you also understand that the

19     Court could impose a period of up to three years on supervised

20     release?

21                   THE DEFENDANT:  All right.

22                   THE COURT:  And so, are you pleading guilty freely

23     and voluntarily?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  And are you pleading guilty because
```

1    you are guilty?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  And so, as I understand it, you

4    are a citizen of the country of India; is that correct?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And you are not a citizen of the

7    United States, is that true?

8              THE DEFENDANT:  I don't have it here.

9              THE COURT:   And so, do you understand that this

10   felony conviction can affect your right to become a citizen or

11   enter the country?

12             THE DEFENDANT:  Okay.  I understood.

13             THE COURT:  And more than likely you're going to

14   be deported at the end of this case; do you understand that?

15             THE DEFENDANT:  I understood.

16             THE COURT:  Okay.  And do you have any prior

17   felony convictions?

18             THE DEFENDANT:  Nothing like that.

19             THE COURT:  Okay.  Do you understand that there

20   are certain additional consequences to having a felony

21   conviction?

22             THE DEFENDANT:  Yes.

23             THE COURT:  For example, you can't hold certain

24   offices.

25             You can't possess a firearm.

1                      You can't get certain licenses, and that there are

2      a lot of different consequences to having a felony conviction;

3      do you understand that?

4                      THE INTERPRETER:  Can you, sir, please, speak a

5      little slower for me.

6                      THE COURT:  Did you get the last thing I asked?

7                      THE DEFENDANT:  Yes, I understand.

8                      THE COURT:  Okay.

9                      And so, do you have any other cases pending?

10                     THE DEFENDANT:  None.

11                     THE COURT:  And I'm also required to impose a

12     special assessment of $100.

13                     THE INTERPRETER:  I would -- interpreter needs

14     clarification.

15                     THE COURT:  Okay.

16                     THE INTERPRETER:  "Special assessment" is that a

17     fine?

18                     THE COURT:  It's like a fine, but it's not

19     technically a fine.  But it's something that he has to pay as a

20     result of the case.

21                     THE INTERPRETER:  Thank you.

22                     THE COURT:  Okay.

23                     THE DEFENDANT:  I'm to pay it?

24                     THE COURT:  Yes.  He has to pay.

25                     THE DEFENDANT:  Yes, I will pay.

```
1                    THE COURT:  Okay.  And in a few months I will be
2       sentencing him on the case.
3                    THE DEFENDANT:  Yes, I understand.
4                    THE COURT:  Okay.  And have counsel computed
5       sentencing guidelines on the case?
6                    MR. HELMS:  Yes.  The government has, your Honor.
7                    THE COURT:  Or at least roughly?
8                    MR. HELMS:  Yeah.  We believe the guidelines are
9       33 to 41 months.
10                   THE COURT:  Okay.  Ms. Cal, have you done any
11      calculation?
12                   MS. CAL:  I did not, your Honor.
13                   THE COURT:  Okay.
14                   MS. CAL:  I reviewed the government's calculation.
15      They seemed to be approximately correct.
16                   THE COURT:  Okay.
17                   MS. CAL:  But I didn't specifically do it.
18                   THE COURT:  Okay.  All right.
19                   So, Mr. Rampeesa, the sentencing guidelines are
20      one thing that I look at; do you understand that?
21                   THE DEFENDANT:  Yes, I understand.
22                   THE COURT:  And they're somewhere within the range
23      of --
24                   Did you say 33 to 41 months?
25                   MR. HELMS:  Yes, your Honor.
```

1           THE COURT:  Yeah.  They're somewhere in the range

2   of 33 to 41 months.

3           THE DEFENDANT:  All right.

4           THE COURT:  Okay.  And so, I'll also have an

5   extensive presentence report about your background and your

6   history.

7           THE DEFENDANT:  All right.  I understand.

8           THE COURT:  Okay.  And there are some other things

9   I have to look at in terms of deciding what sentence to impose.

10          THE DEFENDANT:  All right.

11          THE COURT:  Okay.  And so, I know that Ms. Cal has

12  talked to you about your rights that you have to a trial; do

13  you understand that?

14          THE DEFENDANT:  All right.  Okay.

15          THE COURT:  Do you understand you could have a

16  trial on your case instead of pleading guilty?

17          THE DEFENDANT:  So this is a pretrial and after

18  this there's a sentencing?

19          THE COURT:  This is a plea, and after that there's

20  a sentencing.

21          THE DEFENDANT:  All right.  I understand.

22          THE COURT:  Okay.

23          And so, do you understand that you could have a

24  trial on your case either by jury or by judge?

25          THE DEFENDANT:  Yes, I understand.

```
 1                 THE COURT:   And you would have the right to be
 2     presumed innocent on the case.
 3                 THE DEFENDANT:  Okay.
 4                 THE COURT:  And you could also -- well, I should
 5     say, the government would have to prove you guilty beyond a
 6     reasonable doubt at a trial.
 7                 THE DEFENDANT:  Okay.
 8                 THE COURT:  Okay.  And so, at a trial if you --
 9     Ms. Cal could represent you throughout the entire trial; do you
10     understand that?
11                 THE DEFENDANT:  Yes, I understand.
12                 THE COURT:  Also, at a trial the government would
13     have to bring in witnesses to testify against you.
14                 THE DEFENDANT:  I understand.
15                 THE COURT:  And Ms. Cal could question and
16     cross-examine the witnesses.
17                 THE DEFENDANT:  I understand.
18                 THE COURT:  And you could testify at a trial if
19     you wanted to.
20                 THE DEFENDANT:  Can I speak?
21                 THE COURT:  Yes.
22                 Does he understand that?
23                 THE DEFENDANT:  That was during the trial.  Can I
24     speak during the trial?
25                 THE COURT:  Yes.  Yes, he can speak.  He can
```

```
 1   testify.

 2              THE DEFENDANT:  I understand.

 3              THE COURT:  Okay.  Or he wouldn't have to testify

 4   if he didn't want to.

 5              THE DEFENDANT:  Okay.  I understand.

 6              THE COURT:  And if he decided not to testify, it

 7   couldn't be used against him in any way.

 8              THE DEFENDANT:  All right.  Okay.

 9              THE COURT:  All right.  Lastly, as far as his

10   rights go, if he wanted to call witnesses, I would help him

11   bring in witnesses with subpoenas.

12              THE DEFENDANT:  Okay.

13              THE COURT:  Okay.

14              So, is it clear that by pleading guilty he gives

15   up all of these rights?

16              THE DEFENDANT:  Okay.  I understand.

17              THE COURT:  And there will be no trial on his

18   case.

19              THE DEFENDANT:  Okay.  I understand.

20              THE COURT:  Okay.  All right.  Then, the charge in

21   this case charges conspiracy to commit visa fraud and harbor

22   aliens for profit.

23              THE DEFENDANT:  Okay.  I understand.

24              THE COURT:  And I'm required to find out some of

25   the facts of the case; do you understand is that?
```

```
 1                THE DEFENDANT:  Yes, I understand.

 2                THE COURT:  And I'm going to allow the prosecutor,

 3    or the government in the case to ask him questions about his

 4    involvement.

 5                THE DEFENDANT:  All right.

 6                THE COURT:  And Ms. Cal can ask questions if she

 7    needs to.

 8                THE DEFENDANT:  All right.

 9                THE COURT:  Okay.  Mr. Helms, I'm going to allow

10    you to proceed by inquiry here.

11                MR. HELMS:  Thank you, your Honor.

12                Mr. Rampeesa, as you noted earlier, you're not a

13    citizen of the United States, correct?

14                THE DEFENDANT:  Yes.

15                MR. HELMS:  You're not a citizen of the United

16    States?

17                THE DEFENDANT:  No.

18                MR. HELMS:  You're from India?

19                THE DEFENDANT:  Yes.

20                MR. HELMS:  And you entered the United States in

21    May 2015?

22                THE DEFENDANT:  Yes.

23                MR. HELMS:  And when you entered the United

24    States, you came on an F-1 student visa?

25                THE DEFENDANT:  Yes.
```

```
1                    MR. HELMS:  To attend Northwestern Polytechnic
2    University?
3                    THE DEFENDANT:  Yes.
4                    MR. HELMS:  And you knew that as a foreign student
5    on an F-1 visa that your status is only valid if you're
6    enrolled as a full-time student?
7                    THE DEFENDANT:  Yes.
8                    MR. HELMS:  And you also knew for your status to
9    be valid that you had to be making progress toward the
10   completion of your degree?
11                   THE INTERPRETER:  Could you break up the
12   sentence, sir?
13                   MR. HELMS:  You also knew for your status to be
14   valid that you needed to continue working toward completion of
15   your degree?
16                   THE DEFENDANT:  Yes.
17                   MR. HELMS:  And are you familiar with something
18   called a Form I-20?
19                   THE DEFENDANT:  The one we first come to school at
20   admission that's what they gave us, right?  That's what they
21   gave us I-20.
22                   MR. HELMS:  Yes.  So you've heard of a Form I-20?
23                   THE DEFENDANT:  Yes.
24                   MR. HELMS:  For instance, it allows you to apply
25   for an F-1 student visa?
```

1              THE DEFENDANT:  Yes.  First they gave me the I-20.

2    I used it to apply for a visa and I got a slot.  I got -- then

3    I came, they approved it and I came here.

4              MR. HELMS:  And you know that form is proof of

5    your legal and academic status in the United States?

6              THE DEFENDANT:  Yes.  Yes.

7              MR. HELMS:  And that form can also be used to

8    reenter the United States if you were to travel abroad?

9              THE DEFENDANT:  After coming here I never went

10   anywhere.

11             MR. HELMS:  Okay.

12             Did you understand if you were to leave you could

13   come back using the Form I-20?

14             THE DEFENDANT:  Yes.

15             MR. HELMS:  The Form I-20 also allows you to

16   participate in practical training?

17             THE DEFENDANT:  Okay.

18             MR. HELMS:  And you also receive a Form I-20 when

19   you transfer schools, correct?

20             THE DEFENDANT:  Yes.

21             MR. HELMS:  Do you remember first contacting the

22   University of Farmington around September 2017?

23             THE DEFENDANT:  I didn't call.  A man name Santosh

24   got me the admission.

25             MR. HELMS:  But you remember sending an e-mail to

1   the University of Farmington on or around September 14th, 2017?

2           THE DEFENDANT:  Yes.

3           MR. HELMS:  And you said you were referred by

4   Santosh Sama?

5           THE DEFENDANT:  Yes.

6           MR. HELMS:  And you also sent a completed

7   application to the University of Farmington?

8           THE DEFENDANT:  Yes.

9           MR. HELMS:  And do you remember in December 2017

10  that you e-mailed the university in response to a billing

11  invoice?

12          THE DEFENDANT:  Yes.

13          MR. HELMS:  And you said that you had paid $1500

14  to Santosh Sama and for the university to check with him?

15          THE INTERPRETER:   Can you repeat that?

16          MR. HELMS:  I'll break it up.

17          You said you had paid Santosh Sama $1500?

18          THE DEFENDANT:  Yes.

19          MR. HELMS:  And you asked the university to check

20  with Mr. Sama?

21          THE DEFENDANT:  Yes.

22          MR. HELMS:  And do you remember calling the

23  University of Farmington on October 2nd, 2018?

24          THE DEFENDANT:  Yes.

25          MR. HELMS:  Do you remember telling them that you

1    were working with Santosh Sama?

2             THE DEFENDANT:  Yes.

3             MR. HELMS:  And did you remember confirming with a

4    University of Farmington employee that going to school there

5    was just about maintaining status?

6             THE DEFENDANT:  Yes.

7             MR. HELMS:  And that you were not going to any

8    classes?

9             THE DEFENDANT:  Yes.

10            MR. HELMS:  And you told the university employee

11   that Santosh gave you $200 per student you recruited?

12            THE DEFENDANT:  Yes.  They gave me $200.

13            MR. HELMS:  And you didn't receive $200 in cash,

14   you would receive credits to your tuition at the University of

15   Farmington?

16            THE DEFENDANT:  Yes.  Yes.  They haven't given me

17   any money, they just decreased the fees.

18            MR. HELMS:  And do you remember saying in October

19   2018 that at the time you had recruited between 50 to 70

20   students?

21            THE INTERPRETER:   50 to?

22            MR. HELMS:  70.

23            THE DEFENDANT:  I didn't recruit that many.

24            MR. HELMS:  You don't recall saying that on the

25   phone?

```
 1                    THE DEFENDANT:  I -- I gave, I referred the people
 2    who wanted to come to the school to Santosh.  I never got any
 3    cash.  He waived 6,000 fee, and not more nor less than that.  I
 4    didn't get anything less than that.
 5                    MR. HELMS:  We might revisit that.  I'll move on
 6    at this point.
 7                    You don't deny that you recruited students for the
 8    university?
 9                    THE DEFENDANT:  Yes.
10                    MR. HELMS:  And when you recruited students, you
11    told them the university did not have classes?
12                    THE INTERPRETER:  He said he didn't understand, so
13    I'm repeating.
14                    THE DEFENDANT:  Yes.
15                    MR. HELMS:  And you also told them that the
16    university was just for maintaining status?
17                    THE DEFENDANT:  Yes.
18                    MR. HELMS:  Okay.  When you had recruited a
19    student, how did you let Mr. Sama know you had recruited that
20    student?
21                    THE DEFENDANT:  Phone.
22                    MR. HELMS:  Phone.
23                    You would call him?
24                    THE DEFENDANT:  He was in California.  I live in
25    California.  We both live within two, three mile distance.
```

```
 1                    MR. HELMS:  Does that mean you called him to tell
 2    him about a student you recruited?
 3                    THE INTERPRETER:  I'm asking him to slow down.
 4                    THE DEFENDANT:  If the student wanted an
 5    admission, they came to me.  I didn't know anybody in the
 6    school.  So, I gave Santosh's number to them and they talked to
 7    him.  The two of them talked.  They talked about the process
 8    and how it is.
 9                    MR. HELMS:  Did you have an understanding as to
10    what Mr. Sama would do at that point after talking to the
11    student?
12                    THE DEFENDANT:  He got them admission when they
13    said they needed an admission.
14                    MR. HELMS:  So, after Mr. Sama had talked to a
15    student you recruited, Mr. Sama would contact the university?
16                    THE DEFENDANT:  Yes.
17                    MR. HELMS:  And I want to show you a copy of
18    something.  This is a ledger that Mr. Sama provided.  You may
19    not have seen this before.
20                    Have you seen this before?
21                    THE DEFENDANT:  No, I don't know this.  You want
22    me to look at it?
23                    MR. HELMS:  If you could, turn to a page that has
24    February at the top.  On this page, number five is a name
25    there.  Do you see that?
```

```
1                    THE DEFENDANT:  Okay.
2                    MR. HELMS:  Could you read the name of that
3      person?
4                    THE DEFENDANT: Sai Pavan --
5                    THE COURT REPORTER:  I'm sorry.  I'm not hearing
6      him.
7                    MR. HELMS:  Could you say it in the microphone.
8                    THE DEFENDANT:  Sai Pavan Reddy Edla.
9                    THE COURT REPORTER:  Could you spell it, please.
10                   MS. CAL:  Yeah.  S-A-I P-A-R-- P-A-V-A-N R-E-D-D-Y
11     E-D-L-A.
12                   MR. HELMS:  And, Mr. Rampeesa, next to that name
13     is a "P" circled; do you see that?
14                   THE DEFENDANT:  Yes.
15                   MR. HELMS:  Do you recognize this as a student
16     that you referred to Mr. Sama?
17                   THE DEFENDANT:  Might be.  I don't know clearly.
18     Sometimes the one student ask me I would give him Santosh's
19     number and they would talk and after that I don't know what
20     happened.  I don't know if they joined.  People who wanted,
21     they took it.  And people who didn't, I don't know correctly
22     what happened between them.
23                   MR. HELMS:  Do you recognize this person listed at
24     number five as a person who came to you, first?
25                   THE DEFENDANT:  Yes.
```

```
 1              MR. HELMS:  And then same question with Line 28.
 2   There's a name Anil, A-N-I-L, Kumar, K-U-M-A-R, Aparadi,
 3   A-P-A-R-A-D-I, do you see that?
 4              I'm sorry.  Line 26.  Line 26.
 5              THE DEFENDANT:  I remember.
 6              MR. HELMS:  I did spell it.  Is this -- I said the
 7   number wrong.  Line 26.
 8              Is this a student that you recall him coming to
 9   you first?
10              THE DEFENDANT:  Yes.
11              MR. HELMS:  And then Line 28, Vamshi Krishna
12   Reddy.
13              And I believe the court reporter has the name
14   listed there.
15              THE DEFENDANT:  Yes.
16              MR. HELMS:  Is this a person that came to you,
17   first?
18              THE DEFENDANT:  Yes.
19              MR. HELMS:  And then if we turn a few more pages.
20              Mr. Rampeesa, at the top of this page the name
21   "Prem" is written; do you see that?
22              THE DEFENDANT:  Yes.
23              MR. HELMS:  Do you believe this refers to you?
24              THE DEFENDANT:  The name?
25              MR. HELMS:  Yes.
```

1            THE DEFENDANT:  Yes.

2            MR. HELMS:  And then the students listed

3    underneath your name, do you recognize these as students who

4    came to you first?

5            THE DEFENDANT:  Can I read it?

6            MR. HELMS:  Yeah.  Sure.

7            THE DEFENDANT:  Even this?

8            MR. HELMS:  Yes.

9            And you can just tell me in general.  Do you

10   recognize these names as people that came to you?

11           THE DEFENDANT:  Yes, I remember.  I recognize.

12           MR. HELMS:  Mr. Rampeesa, when you transferred to

13   the University of Farmington in October 2017, you knew that

14   they did not have classes, right?

15           THE DEFENDANT:  Yes.

16           MR. HELMS:  And you never intended to go to class

17   at University of Farmington?

18           THE DEFENDANT:  No.

19           MR. HELMS:  And you never intended to move to

20   Michigan to take classes there?

21           THE DEFENDANT:  No, I didn't come?

22           MR. HELMS:  And while you were with the

23   university, you never went to class?

24           THE DEFENDANT:  No, I didn't.

25           MR. HELMS:  You worked through your friend Sama to

```
1    recruit students for the University of Farmington?
2                    THE DEFENDANT:  Yes.  Yes.  Through Santosh.
3                    MR. HELMS:  And in return for recruiting students
4    you received credits off your tuition?
5                    THE DEFENDANT:  Yes.
6                    MR. HELMS:  And you understand that you are
7    pleading guilty to conspiracy to harbor aliens for profit and
8    to commit visa fraud?
9                    THE DEFENDANT:  Yes.
10                   MR. HELMS:  So you agreed with another person or
11   persons to, one, conceal or harbor an alien who remained in the
12   United States in violation of law?
13                   MS. CAL:  You want to break that down for her.
14   Can you break that down?
15                   MR. HELMS:  You agreed with another person or
16   persons to conceal or harbor an alien who remained in the
17   United States in violation of the law?
18                   THE DEFENDANT:  I understand.
19                   MR. HELMS:  And those aliens were the students
20   that you recruited?
21                   THE DEFENDANT:  Yes.
22                   MR. HELMS:  Who weren't going to classes?
23                   THE DEFENDANT:  Yes.  They weren't going to
24   classes.
25                   MR. HELMS:  And you knew that those aliens were
```

```
 1    remaining in the United States in violation of law?

 2              THE DEFENDANT:  Yes.

 3              MR. HELMS:  And you committed this offense for

 4    private financial gain, which was to receive credits off your

 5    tuition?

 6              THE DEFENDANT:  Yes.

 7              MR. HELMS:  And you also agreed with another

 8    person to knowingly possess, obtain, accept, or receive an

 9    I-20 --

10              THE INTERPRETER:  Possess, obtain?

11              MR. HELMS:  Accept or receive.

12              THE DEFENDANT:  Yes.

13              MR. HELMS:  -- or to cause another person to

14    possess obtain or receive an I-20?

15              THE DEFENDANT:  Yes.

16              MR. HELMS:  And that document is evidence of an

17    authorized stay?

18              THE DEFENDANT:  Yes.

19              MR. HELMS:  And you knew that that I-20 for you

20    and for the other students was obtained by fraud?

21              THE DEFENDANT:  Yes.

22              MR. HELMS:  And you knowingly --

23              THE COURT:  It sounds like we're getting a little

24    repetitious here.

25              MR. HELMS:  This is the elements, your Honor.  I'm
```

```
1     very close to finishing.
2                    THE COURT:  All right.
3                    MR. HELMS:  You knowingly and voluntarily joined
4     this conspiracy?
5                    THE DEFENDANT:  Yes.
6                    MR. HELMS:  And you or another member of the
7     conspiracy did at least one of the overt acts described in the
8     indictment?
9                    THE DEFENDANT:  Yes.
10                   MR. HELMS:  And I'm going to read one of those
11    overt acts:
12                   On or about October 2nd, 2018 you telephoned an
13    HSI undercover agent, the University of Farmington employee,
14    regarding enrolling in the university in a "pay to stay"
15    scheme.
16                   THE DEFENDANT:  Okay.
17                   MR. HELMS:  And you also in January of 2019 you
18    came to the University of Farmington --
19                   THE DEFENDANT:  Yeah.  They invited me.
20                   MR. HELMS:  -- and you came to discuss the school
21    and efforts to recruit students?
22                   THE DEFENDANT:  What they told me, I wasn't here,
23    they said we'll book your flight and we'll get you a hotel
24    accommodation and they said, you have to come.  You have to
25    come for sure.  They invited me.
```

1          MR. HELMS:  And you came?

2          THE DEFENDANT:  Yes.

3          MR. HELMS:  And Mr. Sama came?

4          THE DEFENDANT:  Yes.  He was there.

5          MR. HELMS:  I'm sorry, your Honor.  One moment.

6          THE COURT:  All right.

7          MR. HELMS:  So, Mr. Rampeesa, the purpose of your

8    trip, of your taking your trip to the university in January of

9    2019 was to meet with Mr. Sama and the university employees in

10   part to talk about recruiting students to the university?

11         THE DEFENDANT:  Yes.

12         MR. HELMS:  And, your Honor, could you take

13   judicial notice that the University of Farmington is within the

14   Eastern District of Michigan?

15         THE COURT:  Yes.  I will take judicial notice of

16   that.  It's located in Oakland County on -- where was it?  I

17   know it's in Oakland County somewhere, isn't it?

18         MS. CAL:  Farmington Hills.

19         THE COURT:  Farmington Hills.  Yeah.  Okay.  All

20   right, then, I'll take judicial notice of that.

21         MS. CAL:  Thank you.

22         THE COURT:  Okay.  All right.  Are counsel, then,

23   satisfied with the factual basis for the plea?

24         MR. HELMS:  Your Honor, may I ask one more

25   question?

```
 1                    THE COURT:  Are you sure it's just one?
 2                    MR. HELMS:  Yes.
 3                    THE COURT:  Okay.  Go ahead.
 4                    MR. HELMS:  Mr. Rampeesa, did you work to recruit
 5      students between the time frame of February 2017 and January
 6      2019?
 7                    THE INTERPRETER:  February?
 8                    MR. HELMS:  February 2017 and January 2019?
 9                    THE DEFENDANT:  Yes.
10                    THE COURT:  Okay.
11                    MR. HELMS:  Okay.  That's it, your Honor.
12                    THE COURT:  All right.  Ms. Cal, do you have
13      anything else?
14                    MS. CAL:  No, your Honor.
15                    THE COURT:  Okay.  All right.  Then are counsel
16      also satisfied that I've complied with Rule 11 in terms of
17      taking the plea?
18                    MR. HELMS:  Yes, your Honor.
19                    MS. CAL:  Defense is satisfied.
20                    THE COURT:  Okay.  All right.  Then, Mr. Rampeesa,
21      what's your plea, is it guilty or not guilty?
22                    THE DEFENDANT:  Guilty.
23                    THE COURT:   Okay.  All right, then, I'm going to
24      find that Mr. Rampeesa is fully competent and capable of
25      entering an informed plea, that he's aware of the nature of the
```

```
 1   charges and the consequences of the plea, and that the plea is

 2   a knowing and voluntary plea supported --

 3               MS. CAL:  Excuse me, your Honor.

 4               The interpreter said she can't take it down

 5   that fast.

 6               THE COURT:  Oh, yeah.   That's right.   That's

 7   right.  I'm sorry.  I was kind of rolling there.

 8               Okay.  You want me to start from the top, again?

 9               THE INTERPRETER:   Yes.  Please.

10               THE COURT:  Okay.  I'm going to make the following

11   findings:  That Mr. Rampeesa is competent and capable of

12   entering an informed plea; that he's aware of the nature of the

13   charges and the consequences of the plea, and that the plea is

14   a knowing plea and a voluntary plea supported by a factual

15   basis as to each of the elements of the offense.

16               THE DEFENDANT:  Yes.

17               THE COURT:  And I'm accepting the plea and finding

18   him guilty of the charge, and I'm referring the case to the

19   probation department for a presentence report.

20               And I'm schedule -- I'm sorry.  Did you finish?

21               THE INTERPRETER:   Okay.

22               THE COURT:  All right.  I'm scheduling the

23   sentencing for?

24               THE CASE MANAGER:  September 17th, 2019 at 2:30.

25               THE DEFENDANT:  Okay.
```

```
 1                    THE COURT:  Okay.  All right.

 2                    MS. CAL:  Your Honor, I just have one matter for

 3      the record.

 4                    THE COURT:  Sure.

 5                    MS. CAL:  Since he has a need for an interpreter,

 6      usually the presentence report is done within 14 or 28 days.

 7      I'm going to need an interpreter there to do the presentence

 8      report and I know the interpreter, most jails are not going to

 9      allow the interpreter in unless, and so I ask that the

10      sheriffs, Marshals bring him here so that he can be interviewed

11      in an office here because it's the only way we're going to be

12      able to get this done in a timely fashion.

13                    THE COURT:  Okay.  I think they schedule the

14      interview within 14 days.

15                    And so, I think they'll allow the interpreter into

16      the jail with an order, and we have some Marshals here so maybe

17      you can tell us what the best procedure is to get the --

18                    THE US MARSHALL:  Your Honor, you can contact our

19      supervisor deputy.  This is -- I'm sorry, your Honor.  A deputy

20      linked with Marshal services.

21                    THE COURT:  Okay.

22                    THE US MARSHALL:  Generally, they make contact

23      with us and we give the approval for them to come in.  If they

24      contact, have any questions other than that, but there

25      shouldn't be a problem with them getting it.
```

```
 1                    THE COURT:  Do you normally have the defendants
 2      brought in here or do the --
 3                    THE US MARSHALL:   We normally do not.
 4                    THE COURT:  You don't.  Okay.  That's kind of what
 5      I thought...
 6                    So, we'll just have the interpreter go out to the
 7      jail.  So --
 8                    MS. CAL:  She says the agency gets called, that
 9      she doesn't know who will be able to be going out there.
10                    THE COURT:  Okay.  Well, someone will need to go
11      to the jail to do the interview.
12                    THE INTERPRETER:   The agency will notify whoever
13      the interpreter is available at that time.
14                    THE COURT:  Okay.  Well, I'll have my case manager
15      contact the agency to make sure that someone is there on the
16      date that the interview is scheduled.  Like I said, it will be
17      within two weeks, typically.
18                    THE INTERPRETER:  Yes, sir.
19                    THE COURT:  Okay.  Anything else we need to take
20      up?
21                    MR. HELMS:  No, your Honor.
22                    MS. CAL:  No, your Honor.
23                    THE COURT:  Okay.  Then, if there's nothing else,
24      we'll officially be in recess.
25                    MS. CAL:  Thank you, your Honor.
```

```
 1              MR. HELMS: Thank you, your Honor.

 2         (At 12:05 p.m. proceedings concluded)

 3

 4                  C E R T I F I C A T E

 5         I, Merilyn J. Jones, Official Court Reporter of the

 6    United States District Court, Eastern District of Michigan,

 7    appointed pursuant to the provisions of Title 28, United States

 8    Code, Section 753, do hereby certify that the foregoing pages

 9    1-32, inclusive, comprise a full, true and correct transcript

10    taken in the matter of the United States of America versus Prem

11    Kumar Rampeesa, 19-cr-20026 on Monday, June 3, 2019.

12

13

14                       /s/Merilyn J. Jones
                         Merilyn J. Jones, CSR, RPR
15                       Federal Official Reporter
                         231 W. Lafayette Boulevard
16                       Detroit, Michigan  48226

17    Date: June 14, 2019

18

19

20

21

22

23

24

25
```