UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 19-20026 |
| Plaintiff, | Hon. Gershwin A. Drain |
| v. | |
| D-4 Prem Kumar Rampeesa, | **Offense:**<br>18 U.S.C. § 371<br>Conspiracy to commit visa fraud and harbor aliens for profit |
| Defendant. | |
| | **Maximum Penalty:** 5 years |
| | **Maximum Fine:** $250,000 |
| | **Supervised Release:**<br>Not more than 3 years |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Prem Kumar Rampeesa is a foreign citizen who abused the student visa program so that he could remain in the United States illegally. Moreover, he recruited other foreign students to do the same, and in return for his recruitment efforts, he received at least $6,000 in tuition credits. Accordingly, the United States of America respectfully recommends that the Court impose a sentence within the guidelines range of **24 to 30 months**, as calculated by the U.S. Probation Department. Such a sentence is necessary in light of the seriousness of the offense, the need to punish Rampeesa and deter others from committing the same

misconduct, Rampeesa's personal characteristics, and the goal of avoiding unwanted sentencing disparities.

### I. BACKGROUND

Defendant Prem Kumar Rampeesa is a citizen of India—and not the United States—who first traveled to this country in May 2015 on a temporary student visa known as an F-1 visa. (PSR, p. 3, 56); (Plea Hrg., ECF No. 85, PageID.317). Before he could obtain his F-1 visa, Rampeesa applied to study in the United States at a university through the Student and Exchange Visitor Program ("SEVP"), which is overseen by the Department of Homeland Security. (*Id.* at ¶ 10–11). Once accepted by a university—in this case Northwestern Polytechnic University—the school issued a "Certificate of Eligibility for Nonimmigrant Student Status," better known as a Form I-20. (*Id.* at ¶¶ 10–12, 56); (Plea Hrg., ECF No. 85, PageID.317–18).

Rampeesa's Form I-20 permitted him to enter the United States, (PSR, ¶¶ 12–13). While in the United States, he used his Form I-20 for identification and proof of legal and academic status in the United States, and it also allowed for him to travel abroad and return to the United States. (*Id.*). For his Form I-20 to remain valid, Rampeesa knew that he needed to maintain his status as a full-time student "making normal progress toward completion of [his] course of study," whether at his original school or any school to which he later transferred. (*Id.* at ¶¶ 13–14); (*see also* Plea Hrg., ECF No. 85, PageID.317–18).

Rampeesa's visa and Form I-20 also permitted him to participate in curricular practical training ("CPT"), which in essence permitted him to find gainful employment as long as he continued to attend classes and make academic progress toward his degree. (PSR, ¶ 16); (Plea Hrg., ECF No. 85, PageID.318–19).

From May 2017 through January 2019, undercover agents from Homeland Security Investigations ("HSI") posed as employees of the University of Farmington ("the University"), located in Farmington Hills, Michigan. (PSR, ¶ 17). The University had no instructors, no classes, and no educational activities. (*Id.* at ¶ 18). Rather, it was a fictitious university used by foreign citizens as a "pay to stay" scheme. (*Id.*). Under the "pay to stay" scheme, foreign citizens would enroll with the University as "students," but they would take no classes nor attend any educational programs; instead, they would pay tuition so that the University would issue them Form I-20's that identified them as students making progress toward a degree, and if they desired, they could also seek gainful employment through the CPT program. (*Id.* at ¶¶ 18–19).

Rampeesa first learned of the University through co-defendant Santosh Reddy Sama. (*Id.* at ¶ 20). On September 14, 2017, Rampeesa emailed an application to the University and in October 2017 he was admitted to the school. (*Id.*); (Plea Hrg., ECF No. 85, PageID.319–21).

In conjunction with co-defendant Sama, Rampeesa went on to recruit students

to the University, and he received $200 per student in tuition credits. (Plea Hrg., ECF No. 85, PageID.321–22). Specifically, he identified and referred other foreign citizens who knowingly enrolled with the University in order to fraudulently maintain their status. (*Id.*); (*see also* PSR, ¶¶ 22–23). In total, Rampeesa recruited at least thirty-five students, and for his efforts, he received at least $6000 in tuition credits. (PSR, ¶ 25); (Plea Hrg., ECF No. 85, PageID.321–26).

During an October 2, 2018 recorded telephone conversation between the University and Rampeesa, he confirmed he was recruiting students for the school through co-defendant Sama, was receiving $200 per student in the form of tuition credits, and was informing the students that the school had no classes and was just for maintaining students. Rampeesa also raised the idea of working directly with the University, rather than through Sama as his intermediary, and he told the school he could bring in 100 students after January 2019. After that conversation, Rampeesa emailed and telephoned the school at least six times between October and December 2018 to inform them of new recruits he wanted to register with the University.

Rampeesa has pled guilty to conspiring to commit visa fraud (18 U.S.C. § 1546(a)) and harboring aliens for profit (8 U.S.C. § 1324) in violation of 18 U.S.C. § 371—without the benefit of a Rule 11 agreement, although the government did offer one. (PSR, ¶¶ 1, 6). Rampeesa's co-conspirators are his fellow co-defendants, including Sama, and the foreign citizen "students" he recruited. (*Id.* at ¶25).

The maximum sentence for his offense is not more than five years' imprisonment, a maximum fine of $250,000, and an applicable term of supervised release between one year and three years. (PSR, p. 2 & ¶¶ 62, 65, 70).

## II. SENTENCING GUIDELINES CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, the Court should use the Sentencing Guidelines as a "starting point and the initial benchmark." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). Indeed, a sentence within the guidelines range carries a "rebuttable presumption of reasonableness." *United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006). This is so because the guidelines "represent nearly two decades of considered judgment about the range of sentences appropriate for certain offenses." (*Id.* at 736) (Sutton, J., concurring). In particular, the guidelines aggregate the "sentencing experiences of individual judges, the administrative expertise of the [Sentencing] Commission, and the input of Congress…." *Id.*

Beyond the Guidelines, the Court should consider all of the factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49–50. The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant;

> and
> (D) to provide the defendant with needed educational or
> vocational training, medical care, or other correctional treatment
> in the most effective manner; [and]
>
> \*\*\*
>
> (6) the need to avoid unwanted sentence disparities among defendants
> with similar records who have been found guilty of similar conduct….

18 U.S.C. § 3553(a).

### A.   Rampeesa's Sentencing Guidelines

The government agrees with the Probation Department that Rampeesa's total offense level is 17 and his criminal history category is I, which results in a guidelines range of **24 to 30 months**. (PSR, ¶ 63); (*see also id.* at ¶¶ 30–38, 41).

Rampeesa's conduct in this case demonstrates why his guidelines range is appropriate. He may suggest his role in committing fraud and harboring illegal aliens for profit stemmed from his attempt to help foreign national students obtain an education—including for some students who sought to transfer from schools that were in danger of losing their accreditation.[1] But his and his students' aims were not

---

[1] These schools cater to "students" who want to exploit our foreign student education program. While they are the exception rather than the rule, unfortunately they do exist. Some of the "pay to stay" schools located around the United States that have been exposed over the years are: Prodee University; Neo-America Language School; Walter Jay M.D. Institute; the American College of Forensic Studies; Likie Fashion and Technology College; Tri-Valley University; Herguan University; the University of Northern Virginia; and the American College of Commerce and Technology. *See also* https://www.buzzfeednews.com/article/mollyhensleyclancy/inside-the-school-that-abolished-the-f-and-raked-in-the-cash (last visited Oct. 28, 2019) (describing the "educational" practices of Northwestern Polytechnic University).

6

so noble.

Their true intent could not be clearer. While "enrolled" at the University, one hundred percent of the foreign citizen students <u>never</u> spent a single second in a classroom. If it were truly about obtaining an education, the University would not have been able to attract anyone, because it had no teachers, classes, or educational services. Instead, Rampeesa and the foreign nationals he recruited wanted to commit a fraud upon the United States. At the outset, Rampeesa informed his recruits there would be no classes and no education. The "students" willingly paid thousands of dollars to the undercover agents so that they could obtain fraudulent documents (Form I-20's) that would allow them to illegally stay, re-enter, and work in the United States.

But Rampeesa's conduct was much more offensive than that of his recruits. Once he knew exactly what the University was—a fraud—he recruited other students who would be willing to commit fraud. He did so in order to make money. Specifically, in exchange for finding and enlisting others to remain in the United States illegally, he received at least $6,000 in tuition credits.

Therefore, Rampeesa's conduct makes a guidelines sentence appropriate, and there are no legitimate reasons to vary below that range. Nonetheless, under our immigration laws, Rampeesa must be sentenced to at least 12 months in custody to permanently bar him from re-entering the United States. Such a bar is certainly

fitting in this case, since Rampeesa intentionally exploited our student visa system for his own financial gain. He did so with the full knowledge that most of his customers/"students" wanted to illegally enter the United States job market or do whatever they wanted to do while illegally staying in the United States. As a direct result of his actions, his recruited students—who were illegally working in the United States—deprived otherwise qualified individuals from obtaining employment or training.

### B. Sentencing Reform Act factors

#### 1. Seriousness of the offense

Rampeesa's decision to conspire to harbor aliens and commit visa fraud is a serious offense, as indicated by Congress's decision to authorize up to five years in prison for the offense. *See* 18 U.S.C. § 371; (PSR, ¶ 62). Specifically in this case, the F-1 student visa program is designed to promote and encourage foreign students to study at American institutions. (PSR, ¶¶ 10–14). Once they finish their course of study, the students must leave within 15 days. (*Id.* at ¶ 14). The idea is that the students return to their native countries armed with new knowledge and skills. Accordingly, the F-1 student visa program is not a naturalization program—i.e., it is not intended to be a path to obtaining U.S. citizenship.

Rampeesa and his co-conspirators (his co-defendants and his recruited students) ignored the purpose of the F-1 student visa program. In fact, Rampeesa has

8

remained in the United States since May 2015—(PSR ¶ 56); (Plea Hrg., ECF No. 85, PageID.317)—totaling over 3.5 years in the United States before he was arrested on January 31, 2019. (*Id.* at ¶ 34). Despite being in the United States for over three years, and having the opportunity to obtain gainful employment under the CPT program, Rampeesa has no work history. (*Id.* at ¶ 59). While this means he did not take away jobs from students and U.S. citizens who are here legally, it does not reflect positively on his work ethic and his overall character—especially since he was using loans from India and credit cards to live here, (*id.* at ¶ 60)—and it means he committed fraud by enrolling in the CPT program but not seeking employment.[2]

In addition, immigration and visa programs have been hot-button topics in the United States for years and national scrutiny has only been increasing. Fairly or unfairly, Rampeesa's conduct casts a shadow on the foreign-student visa program in general, and it raises questions as to whether the potential for abuse threatens to outweigh the benefits. Thus, this factor favors a prison sentence within the guidelines range of 24 to 30 months.

### 2. Deterrence, protection of the public, and nature and circumstances of the offense

If he receives a guidelines sentence, Rampeesa will be deported once he serves his sentence, and he will be permanently barred from returning to the United

---

[2] Although Rampeesa denied any work history during his presentence investigation, there is some evidence that he obtained employment with Hexadus Corp through the CPT program while enrolled at the University.

States in the future. Therefore, personal deterrence is not applicable here.

While personal deterrence may not be achievable, as the Court has noted in every other sentencing in this case and in the related cases, the Court can deter others from committing similar crimes. According to an SEVP summary issued by U.S. Immigration and Customs Enforcement in November 2016, 1.23 million foreign students were studying in the United States on student visas in 2016, and 8697 schools were certified to enroll international students. https://www.ice.gov/doclib/sevis/pdf/byTheNumbersDec2016.pdf (p. 2). This action and the related actions—19-cr-20024 and 19-cr-20025—have garnered considerable media attention since the indictments were unsealed. Presumably, the sentences in this case and the related cases will also receive media focus. As a result, a strong sentence against Rampeesa will have a considerable chance of deterring other foreign students—and some schools—from abusing the F-1 student visa program. In addition, as indicated by the success Rampeesa and the other defendants had in recruiting students to the University, at the very least their vast network of students and potential students could be deterred by guidelines sentences.

In light of the above, a deterrent prison sentence between 24 to 30 months is appropriate.

### 3. Characteristics of the defendant

Rampeesa indicated he has a loving and supportive family, both in India and in the United States. (PSR, ¶¶ 45–46). He attended a university in India and obtained bachelor's degree. (*Id.* at ¶ 55). He also reported receiving a master's degree in computer science from Northwestern Polytechnic University located in Freemont, California. (*Id.* at ¶ 56). Thus, he has received support, love, and opportunities that many defendants who appear before this Court have not, and yet he still chose to commit the instant offense.

As a result, Rampeesa's personal characteristics counsel that a prison sentence of 24–30 months is appropriate.

### 4. Need to avoid sentencing disparities

The Supreme Court reiterated in *Booker* that reducing sentencing disparities was Congress's basis statutory goal in passing the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 250, 264 (2005). Thus, calculating and analyzing the guidelines is the primary driver in avoiding unwanted sentencing disparities. *Id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, by correctly calculating and considering the Sentencing Guidelines, the Court automatically gives "significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007).

11

Therefore, solely with respect to Rampeesa, this factor favors a prison sentence within the guidelines range of 24–30 months. However, the Court should also be mindful of the five other recruiters charged in this case and the two recruiters charged in related cases 19-cr-20024 and 19-cr-20025. In this case, defendants Kakireddy and Kandala received sentences of 18 months, defendant Sama received 24 months, and defendant Thakkallapally received 15 months. (PSR, p. 4). In the related cases, defendants Nune and Prathipati, who recruited fewer students, received sentences of 366 days. (*Id.*). Rampeesa's conduct is similar to that of Kakireddy and Kandala and is deserving of a sentence of at least 18 months.

### III.   CONCLUSION

For the reasons stated above, the government recommends a sentence within Rampeesa's guidelines range of 24–30 months.

Dated: November 12, 2019

        Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s/Brandon C. Helms*
Ronald W. Waterstreet
Timothy P. McDonald
Brandon C. Helms
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313) 226.9100
Email: Ronald.Waterstreet@usdoj.gov
Email: Timothy. McDonald@usdoj.gov
Email: Brandon.Helms@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide notification to all counsel of record.

*/s/Brandon C. Helms*
Brandon C. Helms
Assistant United States Attorney